UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY DAVIS,

          Plaintiff,                         Hon. Richard Alan Enslen

v.                                              Case No. 1:04 CV 688

CORRECTIONAL MEDICAL
SERVICES, et al.,

          Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Meyers' Motion for Summary Judgment. (Dkt. #92). Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions for dismissal or summary judgment, the undersigned recommends that Defendant's motion be **granted** and Plaintiff's action dismissed.

I.          **BACKGROUND**

Plaintiff is presently incarcerated at the Hiawatha Correctional Facility, but the events giving rise to this action occurred during Plaintiff's incarceration at the Pugsley Correctional Facility. Plaintiff initiated this action against Correctional Medical Services, Inc. and the following employees of the Pugsley Correctional Facility: Warden Ray Wolfe; Nurse Practitioner Paula Meyers; and Nurses Michelle Horton, Kim Beckham, Lori Bissau, Edward Pearson, and Nancy Stearns. Plaintiff also sued

Bill Overton, a former director of the Michigan Department of Corrections.  Plaintiff claims that Defendants failed to provide him with proper medical care in violation of his Eighth Amendment rights. On July 25, 2005, the undersigned recommended that save for Plaintiff's Eight Amendment claims against Defendant Meyers, Plaintiff's claims be dismissed for failure to exhaust administrative remedies. (Dkt. #61).  On August 11, 2005, the Honorable Richard Alan Enslen adopted this Report and Recommendation.  (Dkt. #64).  Defendant Meyers now seeks summary judgment.

The following allegations are contained in Plaintiff's complaint.  (Dkt. #1).  Plaintiff suffers from herniated and degenerating discs in his lower back.  When Plaintiff was transferred to the Pugsley Correctional Facility on June 10, 2002, he had a prescription for Vicoden to manage his pain. Shortly after his arrival at Pugsley, however, Defendant Meyers informed Plaintiff that he did not suffer from a herniated disc, but instead suffered from arthritis.  Accordingly, Defendant Meyers modified Plaintiff's medication regimen.  Plaintiff disagreed with Meyers' diagnosis and asked to see a doctor, a request which Meyers refused.

Plaintiff continued to suffer from back pain, so in August 2002, Defendant Meyers prescribed Celebrex.  Plaintiff's back pain persisted and he also began to experience progressively worse headaches, stomach pain, vomiting and diarrhea.  Over the next three months, Plaintiff sent numerous kites to health care complaining of his symptoms.  Plaintiff was repeatedly told that he just needed time to adjust to his new medication.  He also was instructed to take Tylenol for his headaches.  Plaintiff claims that he was never examined by a doctor and never received any medical tests.

On November 24, 2002, Plaintiff began vomiting blood.  He was taken to a local hospital where it was determined that his liver and kidneys had stopped functioning.  Plaintiff was subsequently transferred to the University of Michigan Medical Center.  According to Plaintiff, prison officials would

not approve a transfer by helicopter, so he was transported by ambulance.  During the subsequent ambulance ride, Plaintiff suffered from choking as a result of the tube placed down his throat.  Plaintiff was released from the hospital on December 10, 2002, and transferred to the Ryan Correctional Facility where he recuperated.  Plaintiff was transferred back to Pugsley on January 30, 2004.  Medical staff at Pugsley accused Plaintiff of overdosing on Tylenol, but Plaintiff claims that the Celebrex caused him to experience stomach bleeding which ultimately led to his organ failure.

## SUMMARY JUDGMENT STANDARD

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits.  *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996); *Aiken v. The City of Memphis*, 37 F.3d 1155, 1161 (6th Cir. 1994).  The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also, Terry Barr Sales Agency v. All-Lock Co. Inc.*, 96 F.3d 813, 819 (6th Cir. 1996) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion."  *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also, Terry Barr Sales Agency*, 96 F.3d at 819; *Schaffer v. A.O. Smith*

*Harvestore Products, Inc.*, 74 F.3d 722, 727 (6th Cir. 1996).  The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'"  *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989) (quoting *Matsushita Electric Ind. Co.*, 475 U.S. at 587); *see also, Schaffer*, 74 F.3d at 727.

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter."  *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992).  Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient."  *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd Board of Education*, 106 F.3d 135, 140 (6th Cir. 1997).  Furthermore, mere allegations do not suffice.  *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

## ANALYSIS

Plaintiff asserts that Defendant Meyers was deliberately indifferent to his serious medical needs.  Specifically, Plaintiff asserts that Defendant Meyers failed to properly treat his back condition following his arrival at the Pugsley Correctional Facility.  Defendant counters that Plaintiff simply disagrees with the medical care he received, a claim which fails to implicate the Eighth Amendment.

On June 4, 2002, Plaintiff was examined by a physician.  (Dkt. #92, Exhibit A at 32, 34-35).  Plaintiff reported that he was experiencing back spasms and pain, for which he "demand[ed]" that

he be prescribed a muscle relaxant.  The doctor expressed concern over Plaintiff's "chronic" use of muscle relaxers.  For his back pain, Plaintiff was prescribed Disalcid[1] and Flexeril.[2]  *Id.*

        As noted previously, Plaintiff was transferred to the Pugsley Correctional Facility on June 10, 2002.  On June 19, 2002, Plaintiff was examined by Defendant Myers.  (Dkt. #92, Exhibit A at 29).  Plaintiff reported that he was experiencing chronic back pain.  Straight leg raising was negative and his condition was characterized as "stable."  *Id.*  Defendant Myers modified Plaintiff's prescription regimen and instructed him to obtain x-rays of his lumbar spine.  *Id.*  X-rays of Plaintiff's lumbar spine, taken on June 26, 2002, revealed degenerative changes at L4-5 and L5-S1.  (Dkt. #92, Exhibit A at 41).  Later that same day, Plaintiff submitted a request to obtain Flexeril.  (Dkt. #92, Exhibit A at 28).  Defendant Myers responded to Plaintiff's request within 30 minutes and provided Plaintiff with Robaxin.[3]  *Id.*

        On July 24, 2002, Plaintiff was examined by another nurse at the Pugsley facility.  (Dkt. #92, Exhibit A at 27).  Plaintiff reported that his back was "killing" him and that the Robaxin was "not working."  Plaintiff also reported that he was experiencing numbness in his left leg.  The results of an examination were unremarkable.  The next day, Plaintiff was examined by Defendant Myers who prescribed Celebrex.[4]

---

[1]  Disalcid is a nonsteroidal anti-inflammatory medication.  *Physicians' Desk Reference*, vol. 56 at 1981 (2002).

[2]  Flexeril is prescribed "as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physicians' Desk Reference*, vol. 56 at 572 (2002).

[3]  Robaxin is a muscle relaxer prescribed for the treatment of acute musculoskeletal pain.  *See* Robaxin, available at http://arthritis.about.com/od/robaxin/ (last visited on August 30, 2006).

[4]  Celebrex is prescribed to treat acute pain, as well as the pain associated with osteoarthritis and rheumatoid arthritis.  *See* What is Celebrex, available at http://www.fda.gov/cder/drug/infopage/celebrex/celebrex-ptsk.htm (last visited on August 30, 2006).

On August 12, 2002, Plaintiff reported to health care that his back was "getting worse." Asserting that the Celebrex was "not working," Plaintiff requested that he be prescribed Vicodin[5] and Soma.[6] *Id.* On August 19, 2002, Plaintiff was examined by Defendant Myers. (Dkt. #92, Exhibit A at 26). Plaintiff reported that he was feeling "a little better." Defendant Myers increased Plaintiff's Celebrex dosage. *Id.* On November 21, 2002, Plaintiff was examined by another nurse at the Pugsley facility. (Dkt. #92, Exhibit A at 25). Plaintiff reported that he was eating without difficulty.

On November 25, 2002, Plaintiff was examined on an emergency basis. Plaintiff reported that he was vomiting and experiencing abdominal pain. *Id.* He was transported to the Munson Medical Center Emergency Room for evaluation. (Dkt. #92, Exhibit A at 25, 38-39). Plaintiff reported that he was depressed and had not eaten in nine days. (Dkt. #92, Exhibit A at 38). Plaintiff also reported that he had been taking 8-12 regular strength acetaminophen tablets each day for the past several days. *Id.* Plaintiff was hospitalized until December 9, 2002. (Dkt. #92, Exhibit A at 40). It was subsequently determined that Plaintiff suffered liver and renal failure resulting from an acetaminophen overdose. (Dkt. #92, Exhibit A at 14, 16, 40; Dkt. #97, Exhibit 1 at 4, 19, 34-36).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate

---

[5] Vicodin is a semisynthetic narcotic analgesic. *Physicians' Desk Reference*, vol. 56 at 516 (2002).

[6] Soma is a muscle relaxer prescribed to treat low back pain. *See* Muscle Relaxants for Low Back Pain, available at http://www.webmd.com/hw/back_pain/hw56184.asp (last visited on August 30, 2006).

indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

In support of her motion, Defendant has submitted the medical records cited above, as well as an affidavit which confirms the course of treatment she administered to Plaintiff. (Dkt. #92, Exhibit B). This evidence contradicts Plaintiff's claim. While the Court disagrees with Defendant and finds that Plaintiff was, in fact, suffering from a serious medical need, the Court notes that the medical record fails to support Plaintiff's subjective allegations of pain and limitation. Moreover, Plaintiff's allegation that he suffers from herniated discs likewise enjoys no support in the record. In response, to Defendant's motion, Plaintiff has submitted absolutely no evidence and has instead chosen to rely on

unsubstantiated allegations.  As previously noted, such is insufficient to defeat a properly supported motion for summary judgment.

Plaintiff may disagree with Defendant's treatment decisions and, furthermore, may even consider such decisions to constitute negligence.  To the extent, however, that Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, Defendant Myers is entitled to summary judgment.  *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (if prison officials responded reasonably to a substantial risk to an inmate's health or safety, they may avoid liability S even if the harm ultimately was not averted).

In sum, Plaintiff has not introduced evidence from which a reasonable person could conclude that Defendant Myers acted unreasonably in this matter.  The undersigned concludes, therefore, that Defendant Myers is entitled to summary judgment.  Furthermore, to the extent that Plaintiff's claim is interpreted not as a *denial* of medical treatment, but a *delay* thereof, the result is the same.  When evaluating a claim that access to appropriate medical treatment was improperly delayed, the seriousness of this alleged deprivation is evaluated "by examining the effect of the delay in treatment." *Napier*, 238 F.3d at 742.

In this regard, the Sixth Circuit has held that when an inmate asserts that a "delay in medical treatment rose to a constitutional violation [he] must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id.* Failure to present such

evidence will result in summary judgment for the defendants. *Id.* at 742-43; *see also*, *Nur v. Anderson*, 2001 WL 1006278 at *1 (6th Cir., Aug. 24, 2001) (while plaintiff submitted "numerous medical records," none established that Plaintiff suffered a detrimental effect from any delay in treatment, thus summary judgment was appropriate); *Vaughn v. City of Lebanon*, 2001 WL 966279 at *19-20 (6th Cir., Aug. 16, 2001) (plaintiff failed to establish that his alleged deprivation was sufficiently serious, because the medical evidence, while indicating that plaintiff suffered "various injuries and conditions," failed to establish that plaintiff suffered any "detrimental effect on his health" as a result of his delay in treatment); *Lewis v. Turner*, 2001 WL 669816 at *2 (6th Cir., June 7, 2001) (summary judgment was appropriate where plaintiff failed to place in the record any "verifying medical evidence" establishing a "detrimental effect" from any delay in treatment).

Plaintiff offers no evidence that any delay in treatment that he may have experienced caused him to experience a detrimental effect. Accordingly, to the extent that his claim is interpreted as alleging an improper delay in treatment, I conclude that Defendant Myers is likewise entitled to summary judgment.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant Meyers' Motion for Summary Judgment, (dkt. #92), be **granted** and Plaintiff's action dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  August 31, 2006           /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge